Tucker, Richard T., J.
This matter came on for trial without jury on August 31, 2009. Four witnesses, two for each side, testified and 29 exhibits were entered into evidence. Upon the consideration of the testimony that I find to be credible, the exhibits, memoranda and arguments of counsel, I find, rule and enter judgment as follows.

*242
1. Nature of the Action

In this civil contract action the plaintiff Worcester County Refrigeration, Inc. (WCRI) claims to be due further payments totaling $10,055.87 in payment for plumbing services provided on the South High School roofing project (the “Project”) pursuant to a subcontract (the “Sub Contract”) with the defendant, Greenwood Industries, Inc. (“Greenwood”). Plaintiff claims that Greenwood or the defendant United States Fidelity & Guaranty Co. (“USF&G”), who was the surety on a payment bond issued for the Project, owes this amount. The defendant, City of Worcester, is a defendant as the escrow holder of set-aside escrow funds in the amount of $9,088.86 awaiting the resolution of this dispute and this Court’s order as to the proper distribution of the escrow funds.
Greenwood and USF&G defend plaintiffs claim by stating that due to plaintiffs failure to snake or clear drains immediately following their installation, a leak resulted causing property damage and clean-up costs at the project. Greenwood has asserted two back-charges for these costs against WCRI. Defendants, Greenwood and USF&G, state that after the proper adjustments for change orders and backcharges to the original subcontract amount of payment, as well as the amount of $32,182.20 paid to plaintiff to date, the correct subcontract balance owed plaintiff is $1,696.86. Greenwood seeks in a counterclaim against WCRI, judgment in the amount of $8,336.76 in backcharges and judgment in cross claim against the City of Worcester in the amount of $7,809.75 to be paid from the escrowed funds.

2. Findings of Fact

I find the following facts generally, reserving more specified findings for the discussion of the issues below.
On or about June 11, 2004 the City of Worcester entered into a contract with Greenwood, as the general roofing contractor, for the roof replacement project at South High School, Worcester, Massachusetts. At that time USF&G as surety and Greenwood as principal issued a Payment Bond in connection with the Project.
WCRI submitted a proposal bid for plumbing services at the Project and was approved. Greenwood and WCRI executed a Sub Contract agreement dated May 24, 2004 which provided within its specifications for WCRI to perform the replacement of roof drains including up to ten linear feet of piping for each drain with all fittings and support devices required for each drain; provide roof drains, leaders, downspouts and splash block for an entrance to the building; and “snake existing roof drain piping a minimum distance of thirty (30) feet to obtain free-flowing function. Advise architect if free-flowing function is not obtained.” The agreed payment for the Sub Contract plumbing of WCRI was $38,762.00. At trial it was agreed by the parties that WCRI performed additional work for the agreed additional sum of $3,036.07. I find the total amount to be paid under the subcontract was $42,238.07.[1]
Neither the Sub Contract nor the detailed contract specifications related to the plumbing work provided or required WCRI to snake or clean out clogged drains in any specific time frame or order. Although Greenwood claims that the overall specifications of the project required WCRI to “coordinate with work of other trades and provide a fully functional installation” there was no credible evidence that Greenwood, as the general contractor, prior to the leakage incident in question, ever set forth in documentary form or directed WCRI that it take steps to snake or unclog drains according to any time schedule.
On July 24, 2004, following a severe rain storm, a clogged roof drainage pipe overflowed causing water to back up, spill onto the roof, and enter under the temporary membrane installed by Greenwood. The drain that overflowed was a drain that had not yet been snaked or unclogged by WCRI. Subsequent investigation revealed that the drainage pipe was clogged from tar and debris apparently from the original installation of the tar and gravel roof that had been placed thereon years before. It was also uncovered that the clog was located a distance of approximately forty-five feet from the drain. WCRI offered testimony and argued at trial that this was fifty percent further than the contract specifications of thirty feet required for snaking and, therefore it would not have been responsible for unclogging the drain at that distance in any event. Greenwood argued however, and the language of the pertinent requirement of the specification seems to support, that WCRI’s obligation was to snake existing roof drain piping to obtain free flowing function and that such snaking would be done to a minimum distance of thirty feet.
Whether or not WCRI was required under the subcontract specifications to snake each drain to such a distance that would have located the obstruction and unclogged this drain at a forty-five foot depth, the City of Worcester, and its architect, agreed with WCRI’s position and, upon request by WCRI, the City issued its Construction Change Directive dated August 19, 2004 which changed the contract to “snake 1 roof drain in area (’Fj beyond 30’-0.” Clog is at 50’-0." “ Accordingly, I find that snaking this additional distance beyond the thirty-foot depth was ’’extra" and outside of the work required of WCRI in the Sub Contract or specifications.
The leak in question caused damage to carpets, ceilings and other property of the school for which Greenwood was charged $3,306.81 by the City of Worcester.[2] Greenwood backcharged WCRI this amount plus associated labor, materials and other costs (including profit mark-up) in the total amount of $7,919.21.
On its Application and Certification for Payment dated August 30, 2004 (Exhibit 26), Greenwood certi *243 fied to the City of Worcester that to the best of its “knowledge, information and belief, the Work covered by the application for Payment has been completed in accordance with the Contract Documents . . .” The architect for the City also certified on that document that the “quality of the Work is in accordance with the Contract Documents . . .”
There is no other dispute presented by the parties regarding the work performed by WCRI other than the one drain leakage and resulting backcharges. I find that WCRI performed these other duties required by the contract appropriately and completed such tasks within the overall time schedule.

3. Discussion and Rulings

WCRI is entitled to be paid the full contract price for its services unless it is shown that WCRI is contractually responsible for the one drain leakage and the consequential backcharges.
Greenwood and WCRJ both presented evidence as to when, in the exercise of accepted, workmanlike construction procedures, new roof drains should be snaked. Greenwood’s witnesses pointed to the contract provision for coordinated efforts of all trades on the project and argued that new drains should be snaked and unclogged as soon as installed. WCRI responded that with roofing activities continuing, the likelihood of reclogging of drain lines after snaking with roofing material and debris required all lines to be snaked upon completion of the laying of the new roof. This, WCRI testified, was the normal and customary method of snaking newly installed drains.
Neither the Sub Contract nor the plumbing specifications provided a schedule of when the snaking activities should be performed. If the timing of the snaking of drains was not to be left for WCRI to determine, a schedule or directive should have been a provision of the Sub Contract documents or a demand made upon WCRL by the City, architect or Greenwood. Once there was such a demand that the snaking be performed on all installed new drains (albeit after the leakage of July 24, 2004), WCRI complied after advising in writing that the roofers must take measures to prevent roofing debris from collecting around or within the new storm drain assembly or piping since “blockage after cleaning shall be deemed as a cost change as applicable.” Although Greenwood could have required snaking upon drain installation in the documents or by directive (presumably with the support of the architect) it did not do so. Having not required this of WCRI and having assented to the post-leakage snaking of the offending drain past 45’ being treated as an extra, to be performed by WCRI for extra compensation, Greenwood can not claim a breach by WCRI for not having done that which was not contractually required. See, Cueroni v. Coburnville Garage, Inc., et at, 315 Mass. 135, 139 (1943) (consent of owner to deviations from a construction contract by the builder, prevents owner from seeking credits or deductions from payment based upon these deviations).
Accordingly, I find that the plaintiff WCRI did not breach its contract in failing to snake the drain in question immediately upon installation. WCRI is entitled to payment of the full contract amount.
ORDER OF JUDGMENT
a. Judgment shall enter against Greenwood Industries, Inc. and United States Fidelity & Guaranty Co. in favor of Worcester County Refrigeration, Inc. in the amount of $10,055.87.
b. The City of Worcester shall remit the balance of the escrow account that it is holding plus accrued interest in partial payment of the Judgment set forth above.
c. The plaintiff shall submit authority for, and proof of, any costs and attorneys fees sought within fourteen (14) days; defendants may submit opposition to said application within 10 days thereafter.
d. Judgment shall enter for Worcester County Refrigeration, Inc. on Greenwood Industries, Inc.’s counterclaim and for the City of Worcester on Greenwood Industries, Inc.’s cross claim.

The parties differed in their memoranda as to the total Sub Contract payment due, before deductions or back-charges. WCRI states the total amount was $42,238.07; Greenwood claims the total should be $41,798.07. The witnesses did not address this discrepancy of $440.1 accept as fact the statement of Exhibit 9, “Application and Certificate for Payment” of WCRI dated September 23, 2004, which lists this amount as Change Order #3. Thus, I find that the gross payment for the Sub Contract work and agreed change orders was $42,238.07.

The amount of this backcharge by the City to Greenwood was $3,574.36. This included some non drain-leak related charges. The amount that Greenwood alleges were due to the leakage of July 24, 2004 was stated as $3,306.81.